UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| OSVALDO RAUL ANDREATTA,<br><br>Plaintiff,<br><br>v.<br><br>ELDORADO RESORTS CORPORATION, *et al.*,<br><br>Defendants. | Case No. 2:15-cv-00749-RFB-NJK<br><br>**<u>ORDER</u>** |

## I.   INTRODUCTION

This case is before the Court on a Motion to Dismiss filed by Defendants Eldorado Resorts Corporation ("Eldorado") and Michael Marrs, Bruce Polansky, Kristen Beck, Dominic Taleghani, and James Grimes, all of whom are directors, project managers, or vice presidents at Eldorado. ECF No. 12. In their motion, Defendants seek dismissal of Plaintiff Osvaldo Raul Andreatta's First Amended Complaint.[1] The Court has previously orally ruled on this Motion and this written order elaborates the Court's reasoning.

## II.   BACKGROUND

### A. Alleged Facts

Plaintiff alleges the following facts in his Amended Complaint. During the times relevant to this case, Plaintiff was an employee of Eldorado. Plaintiff is a Latino man, a Catholic, and was

---

[1] Defendants also filed a Motion to Dismiss Plaintiff's original Complaint. ECF No. 9. However, Plaintiff filed his Amended Complaint within 21 days of the filing of that motion, which is permitted one time as a matter of course. Fed. R. Civ. P. 15(a)(1)(B). The Amended Complaint is therefore the operative complaint in this action, and Defendants' first Motion to Dismiss is denied as moot.

52 years old at the time he brought this action. He began his employment with Eldorado in November 2008 and worked as a front line sales agent, manager, assistant project director, and sales director during his employment. Plaintiff earned a salary of $455 per week and a commission percentage of 4% with an override of 0.75%.

On approximately July 3, 2014, Plaintiff was hospitalized for high blood pressure, treated, and subsequently released with orders from his doctor not to work more than eight hours per day. That same month, Plaintiff applied and was approved for protected leave under the Family Medical Leave Act (FMLA) with Eldorado. His medical conditions included high blood pressure, reactive hypertension, reflux, and reactive stress. Eldorado repeatedly rejected or disrgarded Plaintiff's requests for leave under the FMLA. When Plaintiff reminded his supervisors, including Defendant Kristen Beck, of his need to work no more than eight hours per day, Plaintiff was yelled at and told to stay the entire day until all tours for Latino customers were completed.

Plaintiff was also instructed by senior management at Eldorado to target FMLA employees for "write ups" for poor performance so that Eldorado would have cause to fire these employees. Plaintiff was told to obtain three write ups as soon as possible on FMLA employees, and alleges that this was part of a practice by Eldorado in which middle managers and human resources officers were ordered to place employees on administrative leave for long enough periods of time that they would not qualify for FMLA leave the following year. When Plaintiff refused to comply with senior management's orders, his positions, income, and commissions were changed in ways that appeared to be promotions, but operated as demotions because they negatively impacted his income. Plaintiff also alleges that he endured verbal abuse in his work environment and was threatened with loss of his job and physical harm if he did not like it. After reporting these comments, Plaintiff's positions, commissions, and sales teams were changed to negatively impact his income.

Plaintiff also alleges that Eldorado frequently engaged in the practice of matching sales representatives to potential customers by race, color, religion, and national origin. Plaintiff was repeatedly sent to tables with Latino customers or told to target Latino customers who walked through the door. As a result, Plaintiff was repeatedly denied sales opportunities for customers

who were not Latino or Catholic. Plaintiff also alleges that Defendant Taleghani referred to him as a "Spic" and often commented that "Latino women are always barefoot and pregnant."

In addition, Plaintiff makes several allegations against Eldorado with respect to his pay. Plaintiff alleges that Eldorado changed his pay rate and commission percentage several times without any notice or opportunity for Plaintiff to review the changes, and that there were no set criteria to determine when his pay rate would change or how it would change. Further, Plaintiff alleges that during his employment with Eldorado, he was not provided with rest or meal breaks, was not paid overtime despite consistently working over 40 hours per week, and was charged commission reversals by Eldorado without any explanation for sales made months or years earlier. Finally, Plaintiff alleges that Eldorado engaged in "backdoor" sales by offering customers a better deal, waiting for the customer to accept, canceling Plaintiff's sales in order to sell the property directly to the customer, and cutting Plaintiff's commissions on the sales.

In his Amended Complaint, Plaintiff asserts thirteen causes of action: 1) disability discrimination under the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act of 1964, and N.R.S. 613.330; 2) race, color, religion, and national origin discrimination under Title VII and N.R.S. 613.330; 3) FMLA interference; 4) breach of contract; 5) retaliation under the FMLA, Title VII, and N.R.S. 613.330; 6) breach of the implied covenant of good faith and fair dealing; 7) tortious discharge; 8) failure to pay overtime under the Fair Labor Standards Act (FLSA) and N.R.S. 608.018; 9) failure to pay each hour worked under N.R.S. 608.016; 10) failure to pay wages for periods for meal and rest under N.R.S. 608.019; 11) unlawful taking of wages under N.R.S. 608.100; 12) willful failure/refusal to pay wages under N.R.S. 608.190; and 13) waiting time penalties under N.R.S. 608.040.

**B. Procedural History**

Plaintiff filed his original Complaint on April 23, 2015. ECF No. 1. Defendants filed a Motion to Dismiss on June 23, 2015. ECF No. 6. This Motion was denied on March 30, 2016. ECF No. 32.

On July 10, 2015, Plaintiff filed an Amended Complaint, which is now the operative complaint in this action. ECF No. 8; see note 1, supra. Defendants filed a second Motion to Dismiss

on July 27, 2015. ECF No. 12. Plaintiff voluntarily dismissed Defendants Grimes and Polansky from this action on December 18, 2015. ECF No. 24.

The Court held a hearing on March 30, 2016 in which it granted in part and denied in part Defendants' second Motion to Dismiss. ECF No. 32. The Court held a status conference on May 31, 2016. ECF No. 39.

### III.  LEGAL STANDARD

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss for failure to state a claim, "[a]ll well-pleaded allegations of material fact in the complaint are accepted as true and are construed in the light most favorable to the non-moving party." Faulkner v. ADT Sec. Servs., Inc., 706 F.3d 1017, 1019 (9th Cir. 2013). To survive a motion to dismiss, a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," meaning that the court can reasonably infer "that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted).

### IV.  ANALYSIS

After reviewing the parties' briefs, the Court concludes that Defendants' Motion to Dismiss must be granted in part and denied in part. Defendants raise a variety of arguments in support of their motion. The Court considers each argument below.

#### A. Plaintiff's Disability Discrimination Claim (Count 1)

Next, Defendants argue that Plaintiff's disability discrimination claim (Count 1) must be dismissed for two reasons. First, Defendants contend that Plaintiff failed to exhaust his administrative remedies as to this claim. Second, they argue that Plaintiff has not pled sufficient facts to state a disability discrimination claim on either a disparate treatment theory or a failure to

accommodate theory.

### *1. Exhaustion of Administrative Remedies*

The ADA incorporates the exhaustion requirement set forth in Title VII, which requires that a plaintiff first file a charge with the Equal Employment Opportunity Commission (EEOC) before bringing suit. See 42 U.S.C. § 12117(a) (incorporating 42 U.S.C. § 2000e-5); id. § 2000e-5(f)(1). "Although failure to file an EEOC complaint is not a complete bar to district court jurisdiction, substantial compliance with the exhaustion requirement is a jurisdictional pre-requisite. The jurisdictional scope of the plaintiff's court action depends on the scope of the EEOC charge and investigation." Leong v. Potter, 347 F.3d 1117, 1122 (9th Cir. 2003) (citations omitted). While the plaintiff ordinarily must first present to the EEOC each specific claim he brings in district court, "the district court has jurisdiction over any charges of discrimination that are like or reasonably related to the allegations made before the EEOC, as well as charges that are within the scope of an EEOC investigation that reasonably could be expected to grow out of the allegations." Id. (internal quotation marks omitted).

The Court finds that Plaintiff has not properly exhausted his disability discrimination claim. In doing so, the Court incorporates Plaintiff's Charge of Discrimination by reference, as Plaintiff's claim depends on this document, Defendants have attached it to their Motion to Dismiss, and no party disputes its authenticity. Knievel v. ESPN, 393 F.3d 1068, 1076 (9th Cir. 2005). In his Charge of Discrimination, Plaintiff checked the boxes for retaliation and for discrimination based on race, religion, and national origin; he did not check the box for disability discrimination. Mot. Dismiss Ex. E, ECF No. 12. Plaintiff did allege facts relating to him being directed to target employees with disabilities but he did not make any reference to his own disability or being targeted based upon his disability. It is a qualitatively different assertion to allege the one's has refused to discriminate against others versus identifying oneself as the person being discriminated against. The Court finds that Plaintiff has not exhausted his disability discrimination claim.

Therefore, Defendants' Motion is granted as to Count 1. In reviewing the oral ruling of the Court, there may have been a misstatement of the ruling on this Count. This written order controls.

**B. Plaintiff's Title VII Discrimination Claims (Count 2)**

Next, Defendants argue that Plaintiff's allegations do not state a claim for race, color, religion, or national origin discrimination. The Court disagrees and finds that Plaintiff has stated a claim for discrimination on these bases; however, to the extent Plaintiff purports to assert a hostile work environment claim on the basis of religion, this claim is dismissed.

To establish a *prima facie* case for discrimination under Title VII, a plaintiff must demonstrate that:  (1) he belongs to a protected class, (2) he was qualified for his job, (3) he suffered an adverse employment action, and (4) similarly situated individuals outside the protected class were treated more favorably, or other circumstances surrounding the adverse employment action lead to an inference of discrimination. Fonseca v. Sysco Food Servs. of Ariz., Inc., 374 F.3d 840, 847 (9th Cir. 2004). "Adverse employment action" is defined broadly, and includes "where an employer's action negatively affects its employee's compensation." Id. at 847.

The Court concludes that Plaintiff has stated a claim under Title VII for discrimination based on race, color, religion, and national origin. Defendants do not dispute that Plaintiff has satisfied the first two requirements; rather, they argue that Plaintiff has not pleaded facts showing that he was personally discriminated against or how Eldorado's alleged policy of steering customers based on race, religion, and other characteristics was discriminatory in nature. The Court disagrees. Plaintiff alleges that he was consistently sent to tables with Latino customers, that he was asked to target Latino customers walking through the door, that he was not allowed to be involved with sales to customers who were not Latino or Catholic, and that these practices negatively impacted his income. Plaintiff has therefore adequately alleged facts showing that he suffered an adverse employment action under circumstances leading to an inference of discrimination.

In Count 2, Plaintiff also appears to be asserting a discrimination claim based on hostile work environment. To state a hostile work environment claim, a Plaintiff must allege that (1) the defendants subjected him to verbal or physical conduct based on a protected characteristic; (2) the conduct was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the

1  conditions of his employment and create an abusive working environment. Surrell v. Cal. Water
2  Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008). "The working environment must both subjectively
3  and objectively be perceived as abusive." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th
4  Cir. 2000) (internal quotation marks omitted). Whether an environment was hostile or abusive is
5  determined by looking at the totality of the circumstances; "[t]hese may include the frequency of
6  the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a
7  mere offensive utterance; and whether it unreasonably interferes with an employee's work
8  performance. Harris v. Forklift Sys., Inc., 510 U.S. 17, 23 (1993). "No one single factor is
9  required." Id.

10  The Court concludes that Plaintiff has adequately stated a claim for hostile work
11  environment based on race, color, and national origin, but not religion. Plaintiff alleges that
12  Defendant Taleghani referred to him as a "Spic" on several occasions and that Taleghani "often
13  remarked that 'Latino women are always barefoot and pregnant." Plaintiff further alleges that he
14  was subjected to slurs, insults, jokes and profanity that were unwelcome and offensive and that
15  Eldorado condoned and failed to correct this conduct. The Court finds that these allegations are
16  sufficient at the pleading stage to state a claim for hostile work environment based upon Plaintiff's
17  race, color, and national origin. Whether these allegations suffice to create a subjectively and
18  objectively hostile work environment is a highly contextual and fact-driven inquiry inappropriate
19  for resolution at this stage.

20  However, Plaintiff has not stated a hostile work environment claim on the basis of his
21  religion. He has not pled any specific facts showing that he was subjected to unwelcome verbal or
22  physical conduct based upon his religion from which the Court could infer the creation of a hostile
23  or abusive working environment. Therefore, this claim is dismissed with leave to amend.

24  The Court therefore grants in part and denies Defendants' Motion as to Count 2 as noted
25  above.

26

27  **C.  Plaintiff's FMLA Interference Claim (Count 3)**
28  Defendants also argue that Plaintiff has failed to state claims for interference under the

1  FMLA. The Court disagrees.

### 1. Applicable Law

"[T]he FMLA creates two interrelated, substantive employee rights: first, the employee has a right to use a certain amount of leave for protected reasons, and second, the employee has a right to return to his or her job or an equivalent job after using protected leave." Bachelder v. Am. W. Airlines, Inc., 259 F.3d 1112, 1122 (9th Cir. 2001). To uphold these rights, the FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" under the Act. 29 U.S.C. § 2615(a)(1).

"To make out a prima facie case of FMLA interference, an employee must establish that (1) he was eligible for the FMLA's protections, (2) his employer was covered by the FMLA, (3) he was entitled to leave under the FMLA, (4) he provided sufficient notice of his intent to take leave, and (5) his employer denied him FMLA benefits to which he was entitled." Escriba v. Foster Poultry Farms, Inc., 743 F.3d 1236, 1243 (9th Cir. 2014) (citation and internal quotation marks omitted). To ultimately prevail on an FMLA interference claim, a plaintiff "need only prove by a preponderance of the evidence that her taking of FMLA-protected leave constituted a negative factor" in the employment decision. The plaintiff "can prove this claim . . . by using either direct or circumstantial evidence, or both." Bachelder, 259 F.3d at 1125.

The FMLA's implementing regulations state that notice must be given at least 30 days in advance if the need for the leave is foreseeable, or "as soon as practicable" otherwise. 29 C.F.R. § 825.302(a). The notice need not be written; verbal notice is sufficient if it makes the employer aware "that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." Id. § 825.302(c). Finally, an employee seeking FMLA leave for the first time "need not expressly assert rights under the FMLA or even mention the FMLA," while an employee seeking FMLA leave for a qualifying reason for which the employer has previously given leave "must specifically reference the qualifying reason for leave or the need for FMLA leave." 29 C.F.R. § 825.302(c).

### 2. Application

Here, the Court finds that Plaintiff has established a prima facie case of interference.

- 8 -

1  Defendants assert that Plaintiff has not alleged sufficient facts to establish a prima facie case, such
2  as from whom he requested leave, how much time he requested, who denied his leave requests,
3  and any specifics regarding the causal connection between his leave requests and Eldorado's
4  alleged adverse action.

5  The Court finds, however, that Plaintiff's allegations are sufficient to establish the five
6  elements of an FMLA interference claim. Plaintiff has alleged that he was eligible for FMLA leave,
7  that he requested leave with sufficient notice, that Defendants denied him FMLA leave and ordered
8  him to come in to work or stay longer than eight hours, and that he was constructively discharged
9  and his compensation was negatively affected as a result. These facts are sufficient to state a claim
10 under the requirements as set forth by the Ninth Circuit in Escriba.

11 Defendants also argue that Plaintiff's FMLA interference claim is barred by the FMLA's
12 two-year statute of limitations. See 29 U.S.C. § 2617(c)(1) (providing that an action may be
13 brought under the FMLA "not later than 2 years after the date of the last event constituting the
14 alleged violation for which the action is brought."). However, where the violation of the FMLA
15 was willful in nature, the statute of limitations extends to three years. 29 U.S.C. § 2617(c)(2).

16 The Court finds that Plaintiff's claims are not barred by the statute of limitations. Plaintiff
17 alleges that Eldorado's interference with her taking of leave under the FMLA was intentional and
18 willful. Therefore, the Court will apply the three-year statute of limitations at this stage. Plaintiff's
19 FMLA claims are not time-barred.

20 **3.  *Allegations Against the Individual Defendants***

21 The only cause of action asserted against the Individual Defendants is Count 3 (FMLA
22 Interference). All of the other counts in the Amended Complaint are brought only against Eldorado
23 and numerous Doe defendants. Defendants argue that the Individual Defendants should be
24 dismissed from this action, because Plaintiffs have failed to allege sufficient facts against them for
25 FMLA interference.

26 Plaintiff may assert claims under the FMLA against Individual Defendants, which is
27 supported by the plain text of the FMLA. See 29 U.S.C. § 2611(4)(A) (defining "employer" as
28 any person engaged in commerce employing more than 50 employees, as well as "any person who

acts, directly, or indirectly, in the interest of an employer to any of the employees of such employer"). It is also supported by the FMLA's implementing regulations and by the holdings of a majority of courts to have reached this issue. See 29 C.F.R. § 825.104(d) ("As under the FLSA, individuals such as corporate officers 'acting in the interest of an employer' are individually liable for any violations of the requirements of FMLA."); Morrow v. Putnam, 142 F.Supp.2d 1271, 1274 (D. Nev. 2001) (analyzing cases).

However, in this case, the Court finds that Plaintiff's claim must be dismissed against the Individual Defendants except Beck and Marrs. Andreatta alleges specific facts with respect to Defendants Kristen Beck, Michael Marrs, and Dominic Taleghani, but not any other Individual Defendant.

Andreatta alleges that he informed Beck that he was medically restricted to working eight hours per day, and that Beck and other supervisors yelled at him and told him he needed to stay at work until all tours for Latino customers were completed. These allegations are sufficient to state a plausible claim for FMLA interference against Beck.

Andreatta's allegations against Marrs are that he forced Andreatta to stay after hours and subjected him to verbal abuse for reporting management's practice of writing up FMLA-eligible employees. These allegations are sufficient to state a claim for FMLA retaliation against Marrs.

However, Andreatta's lone allegation against Taleghani is with respect to one comment he allegedly made during a meeting. This is not alleged to be related to any FMLA decisions made by any Defendant regarding Andreatta's leave, and is insufficient to state an FMLA interference claim against Taleghani. Therefore, the Individual Defendants except for Beck and Marrs are dismissed without prejudice from Andreatta's Amended Complaint.

The Court therefore grants in part and denies in part Defendants' Motion as to Count 3. Count 3 is granted as to the Individual Defendants except for Beck and Marrs.

**D. Breach of Contract (Count 4)**

*1. Applicable Law*

In Nevada, breach of contract is "a material failure of performance of a duty arising under

- 10 -

or imposed by agreement." Bernard v. Rockhill Dev. Co., 734 P.2d 1238, 1240 (Nev. 1987). A breach of contract claim under Nevada law requires (1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach. Richardson v. Jones, 1 Nev. 405, 409 (1865); Rivera v. Peri & Sons Farms, Inc., 735 F.3d 892, 899 (9th Cir. 2013) (citing Richardson).

### 2. *Application*

Defendants argue for dismissal of Plaintiff's breach of contract claim for failure to allege sufficient facts to state a claim. Plaintiff responds that his allegations that Defendants intentionally stole money from him through commission reversals and backdoored sales are sufficient to state a claim for breach of contract. The Court finds that Plaintiff has adequately pleaded facts establishing his breach of contract claim.

First, Plaintiff alleges that a valid contract of employment existed between him and Defendants. Plaintiff states that these contracts required him to work to sell timeshares in exchange for a base wage, commissions, and benefits. Although Plaintiff has not attached copies of the operative contract, he is not required to at this stage, particularly since he states that this information is in the possession of Defendants. Second, Plaintiff has alleged that Defendants breached their employment contracts by engaging in intentional acts to steal wages from Plaintiff. These alleged acts include reversing Plaintiff's commissions for sales made months and years earlier, "back-dooring" sales by negotiating with customers with whom Plaintiff had already finalized sales, and failing to pay Plaintiff overtime wages and wages for each hour worked and by depriving him of lunch and rest breaks. In addition, Plaintiff also alleges that Defendants breached his employment contracts by demoting and constructively discharging him for refusing to participate in Defendants' practice of issuing write-ups to FMLA-eligible employees. Finally, Plaintiff has alleged that he was damaged in the form of lost wages and benefits. Therefore, Plaintiff's claim may proceed.

### E. Plaintiff's Retaliation Claims (Count 5)

#### 1. *Applicable Law*

1   Both Title VII and the FMLA prohibit discrimination against employees because they have opposed any employment practice prohibited under those statutes or because they have made a charge, testified, or participated in an investigation under those statutes. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 2615(a)(2), (b). A prima facie case for retaliation under Title VII requires the plaintiff to show that: (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) a causal link exists between the protected activity and adverse action. Manatt v. Bank of America, N.A., 339 F.3d 792, 800 (9th Cir. 2003). But-for causation is required to satisfy the third prong. Univ. of Texas Southwestern Med. Ctr. v. Nassar, 133 S.Ct. 2517, 2533 (2013).

"Protected activities" under Title VII include opposing allegedly discriminatory acts by one's employer. Id.; 42 U.S.C. 2000e-3(a). They also include making informal complaints to one's supervisor. Ray v. Henderson, 217 F.3d 1234, 1240 n.3 (9th Cir. 2000). "When an employee protests the actions of a supervisor such opposition is a protected activity." Trent v. Valley Elec. Ass'n Inc., 41 F.3d 524, 526 (9th Cir. 1994). Further, if an employee communicates to his employer a reasonable belief the employer has engaged in a form of employment discrimination, that communication constitutes opposition to the activity. Crawford v. Metro. Gov't of Nashville & Davidson Cnty., Tenn., 555 U.S. 271, 276 (2009).

The Ninth Circuit defines "adverse employment action" as "any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity." Ray v. Henderson, 217 F.3d 1234, 1242-43 (9th Cir. 2000).

The Ninth Circuit has not reached the issue of whether this burden-shifting framework also applies to retaliation claims under the FMLA, although it has observed that some version of this framework is applied in at least three other circuits. See Sanders v. City of Newport, 657 F.3d 772, 777 (9th Cir. 2011) (citing cases from the Sixth, Tenth, and First Circuits).

### *2. Application*

The Court finds that Andreatta has stated a claim for retaliation under the FMLA, but not Title VII. In his Amended Complaint, Andreatta alleges that he reported Defendants' alleged discrimination against employees based on their FMLA status to the Las Vegas Eldorado facility. Andreatta also alleges that he refused to participate in this alleged discrimination. He alleges that

as a result of his opposition, Eldorado retaliated against him by making changes to his employment that negatively impacted his income.

However, Andreatta does not allege that he opposed or reported Defendants' alleged discriminatory acts on the basis of race, color, sex, religion, or national origin. Therefore, he has not alleged sufficient facts to state a claim for Title VII retaliation, and this claim is dismissed with leave to amend.

### F. Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing (Count 6)

#### 1. *Applicable Law*

A contractual claim for breach of the implied covenant of good faith and fair dealing exists where "one party performs a contract in a manner that is unfaithful to the purpose of the contract and the justified expectations of the other party are thus denied[.]" Hilton Hotels Corp. v. Butch Lewis Productions, Inc., 808 P.2d 919, 923 (Nev. 1991). Additionally, the defendant may also be tortiously liable under this claim under "limited circumstances" where the employer-employee relationship "approximates the kind of special reliance, trust and dependency that is present in insurance cases" and the employer betrays that relationship in bad faith. D'Angelo v. Gardner, 819 P.2d 206, 215 (Nev. 1991). This additional tort liability is allowed only in cases where "ordinary contract damages do not adequately compensate the victim because they do not require the party in the superior or entrusted position . . . to account adequately for grievous and perfidious misconduct, and contract damages do not make the aggrieved, weaker, 'trusting' party 'whole.'" K Mart Corp. v. Ponsock, 732 P.2d 1364, 1371 (Nev. 1987), abrogated on other grounds by Ingersoll-Rand Co. v. McClendon, 498 U.S. 133 (1990).

#### 2. *Application*

The Court finds that Plaintiff has stated a claim for contractual liability for breach of the implied covenant of good faith and fair dealing. Plaintiff has alleged that Defendants performed under the employment contract in a manner unfaithful to its purpose by charging commission reversals against Plaintiff's earnings, "back-dooring" numerous sales by Plaintiff negotiating a

better deal with the customer and cutting Plaintiff's commissions.

However, Plaintiff has not stated a claim for tort liability for the breach of the implied covenant of good faith and fair dealing. Plaintiff has not alleged a relationship of "special reliance" like the one present in insurance cases. In determining whether such a special relationship exists, important factors include the promise of permanent employment, the length of employment, and termination involving deception, betrayal, or perfidy. Clements v. Airport Auth. of Washoe Cnty., 69 F.3d 321, 336 (9th Cir. 1995) (citing D'Angelo, 819 P.2d at 215). In Plaintiff's Amended Complaint, Plaintiff has not alleged facts that would support a finding that any of the D'Angelo factors exists here. Therefore, to the extent Plaintiffs assert claims for tort liability for breach of the implied covenant of good faith and fair dealing, that claim is dismissed.

### G.  Plaintiff's Tortious Discharge Claim (Count 7)

#### *1.  Applicable Law*

"An employer commits a tortious discharge by terminating an employee for reasons which violate public policy." D'Angelo v. Gardner, 819 P.2d 206, 212 (Nev. 1991). This cause of action is also known in Nevada as a "public policy tort." Id. Tortious discharge includes the dismissal of an employee "in retaliation for the employee's doing of acts which are consistent with or supportive of sound public policy and the common good." Id. at 216. However, this tort is limited to "those rare and exceptional cases where the employer's conduct violates strong and compelling public policy." Sands Regent v. Valgardson, 777 P.2d 898, 900 (Nev. 1989).

The Nevada Supreme Court has recognized a claim for tortious discharge when an employer terminates an employee "for seeking industrial insurance benefits, for performing jury duty or for refusing to violate the law." D'Angelo, 819 P.2d at 212. In addition, tortious discharge arises where an employer terminates an employee "for refusing to work under conditions unreasonably dangerous to the employee." Id. at 216. Finally, even if a plaintiff alleges the violation of a strong public policy, courts may not recognize a public policy tort claim if adequate statutory remedies already exist for the alleged termination. Id. at 216-18.

#### *2.  Application*

1  The Court finds that Plaintiff has adequately alleged a claim for tortious discharge. Plaintiff
2  alleges that he was threatened with termination or withholding of pay if he did not write up
3  employees who took leave under the FMLA, that he refused to do so, and that he was verbally
4  harassed, demoted, and constructively discharged for refusing to do so. Plaintiff also alleges that
5  he sought explanations for Defendants' reversal of commissions and failure to pay wages due, was
6  met with resistance and not given any specific explanations, and was subsequently terminated or
7  constructively discharged. These allegations are sufficient to state a claim for tortious discharge in
8  Nevada.

9  A claim for tortious discharge is "available to an employee who was terminated for refusing
10 to engage in conduct that [she], in good faith, believed to be illegal. Any other conclusion . . .
11 would encourage unlawful conduct by employers and force employees to either consent and
12 participate in violation of the law or risk termination." Allum v. Valley Bank of Nev., 970 P.2d
13 1062, 1068 (Nev. 1998) (internal quotation marks omitted) (alteration in original). Plaintiff alleges
14 that he was discharged or constructively discharged for refusing to engage in conduct that he
15 believed in good faith to be illegal, and for engaging in acts consistent with sound public policy
16 and the common good.

17 Defendants argue that adequate remedies already exist for Plaintiff's public policy tort
18 claims. Defendants cite to the Nevada Supreme Court's decision in D'Angelo, in which the Court
19 cited to a previous case, Sands Regent v. Valgardson, in which it refused to recognize a tortious
20 discharge claim based on age discrimination because the plaintiffs had already recovered tort
21 damages under the ADEA. Here, there has been no showing that Plaintiff has already recovered
22 any tort damages for Defendants' alleged actions. Plaintiff's tortious discharge claims also address
23 a separate wrong—Eldorado's alleged adverse employment action based upon refusal to engage
24 in unlawful conduct—other than Plaintiff's discrimination or retaliation claims. Moreover,
25 Defendants' position is inconsistent with the Nevada Supreme Court's holding in Allum that "[a]
26 claim for tortious discharge should be available to an employee who was terminated for refusing
27 to engage in conduct that he, in good faith, reasonably believed to be illegal." 970 P.2d at 1068.
28 Therefore, under the Nevada Supreme Court's decisions in Allum and D'Angelo, the Plaintiff has

stated public policy tort claims.

Defendants' Motion is therefore denied as to Plaintiff's tortious discharge claim.

**H.  The Nevada Industrial Insurance Act (NIIA)**

Defendants argue that Plaintiff's tort claims for tortious discharge and breach of the implied covenant of good faith and fair dealing are barred by the Nevada Industrial Insurance Act (NIIA). The Court disagrees and finds that the NIIA does not preclude these claims.

The NIIA provides the exclusive remedies for employees "on account of an injury by accident sustained arising out of and in the course of the employment." N.R.S. 616A.020(1); Wood v. Safeway, Inc., 121 P.3d 1026, 1031 (Nev. 2005). Under the NIIA, "accident" is defined as "an unexpected or unforeseen event happening suddenly and violently, with or without human fault, and producing at the time objective symptoms of an injury." N.R.S. 616A.030. "Injury" or "personal injury" is defined as "a sudden and tangible happening of a traumatic nature, producing an immediate or prompt result which is established by medical evidence[.]" N.R.S. 616A.265.

Plaintiff's claims for tortious discharge and breach of the implied covenant of good faith and fair dealing relate to Eldorado's alleged reversal of commission fees earned by Plaintiffs, failure to pay overtime wages and wages for each hour worked, failure to provide breaks for meals or rest, and termination of Plaintiff. These allegations clearly do not constitute "injuries" or "accidents" within the meaning of the NIIA, as they are not violent or traumatic events producing objective symptoms of injuries. Therefore, the NIIA does not bar these claims. The Court denies Defendants' Motion as it relates to this argument.

**I.  FLSA Overtime Claim (Count 8)**

Next, Defendants argue that Plaintiff's allegations relating to his claim for unpaid overtime (Count 8) are not sufficient to state a claim.

"[I]n order to survive a motion to dismiss, a plaintiff asserting a claim to overtime payments [under the FLSA] must allege that she worked more than forty hours in a given workweek without being compensated for the overtime hours worked during that workweek." Landers v. Quality

1  Comm'ns, Inc., 771 F.3d 638, 644-45 (9th Cir. 2014). "A plaintiff may establish a plausible claim
2  by estimating the length of her average workweek during the applicable period and the average
3  rate at which she was paid, the amount of overtime wages she believes she is owed, or any other
4  facts that will permit the court to find plausibility." Id. at 645. While a plaintiff need not allege the
5  amount of overtime compensation he is owed "with mathematical precision," he must nonetheless
6  allege sufficient facts to allow the court to infer that "there was at least one workweek in which
7  [he] worked in excess of forty hours and [was] not paid overtime wages." Id. at 646.
8      The Court finds that Plaintiff's FLSA overtime claim fails to meet the pleading standard
9  set forth in Landers. The only allegations in the Amended Complaint relating to Plaintiff's
10 overtime wages claim are that "Eldorado failed to pay Plaintiff overtime due to him despite the
11 fact that he consistently worked over 40 hours per week," that "Plaintiff believes that Eldorado
12 infrequently paid his overtime based upon hours worked in weekly periods which is not consistent
13 with the law," and that Eldorado "failed and refused to pay overtime" and "fail[ed] to compensate
14 Plaintiff at a rate not less than one and one-half times the regular rate of pay for work performed
15 in excess of forty hours in a workweek." Am. Compl. ¶¶ 26, 108, 109, ECF No. 8. This is precisely
16 the type of pleading foreclosed by Landers. In that case, the Ninth Circuit dismissed an allegation
17 that a plaintiff "worked more than 40 hours per week for the defendants, and the defendants
18 willfully failed to make said overtime and/or minimum wage payments." 771 F.3d at 646.
19 Plaintiff's allegations do not meet the pleading standard for FLSA overtime claims set out in
20 Landers. Therefore, this claim is dismissed with leave to amend.

21
22      **J.  Private Right of Action to Enforce Nevada Labor Statutes**
23      First, Defendants argue that Counts 8 through 13 must be dismissed because there is no
24 private right of action to enforce the labor statutes raised in those counts: N.R.S. 608.018
25 (overtime), N.R.S. 608.016 (failure to pay each hour worked), N.R.S. 608.019 (meal and rest
26 periods), N.R.S. 608.100 (unlawful taking of wages), N.R.S. 608.190 (willful failure to pay
27 wages), or N.R.S. 608.040 (waiting time penalties). Defendants rely on the decision of the
28

Supreme Court of Nevada in Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96 (Nev. 2008),[2] as well as several decisions from courts in this district, to support their argument. In response, Plaintiff states that he does not oppose the dismissal of their claims under these statutes, but reserves the right to file a motion to amend his complaint if proof comes to light that a private right of action may be available under these statutes.

For the purposes of considering possible amendment, this Court notes that it *does* find that there is a basis under Nevada law for an employee to bring a private right of action under N.R.S. 608.140 to recover "wages earned and due according to the terms of his or her employment." N.R.S. 608.140; see Baldonado v. Wynn Las Vegas, LLC, 194 P.3d 96, 104 n.33 (Nev. 2008) (describing N.R.S. 608.140 as providing for "civil actions *by employees* to recoup unpaid wages," and stating that "the existence of express civil remedies within the statutory framework of a given set of laws indicates that the Legislature will expressly provide for private civil remedies when it intends that such remedies exist") (emphasis added).[3] The Court also finds that the statutes invoked in Counts 8 through 13 may provide a basis for recovery of unpaid wages in an action brought under N.R.S. 608.140. Therefore, because amendment would not be futile, Plaintiff shall be permitted to amend his complaint as to these causes of action.

**V.    CONCLUSION**

---

[2] In Baldonado, the Nevada Supreme Court found there is no private right of action to enforce N.R.S. 608.160, N.R.S. 608.100, or N.R.S. 613.120. 194 P.3d at 958-64. However, in a footnote, the Court acknowledged that N.R.S. 608.140 "expressly recognize[s] a civil enforcement action" by employees to recover unpaid wages. Id. at 964 n.33. Subsequent to Baldonado, the Nevada Supreme Court again referenced a privae right of action in an unpublished opinion in Csomos v. Venetian Casino Resort, LLC, in which the court reasoned that the legislature likely intended a private right of action under NRS 608.140 because the statute references attorney fees. No. 55203, 2011 WL 4378744, at *2, 2011 Nev. Unpub. LEXIS 1629 at *6 (Nev. Sept. 19, 2011) ("It is doubtful that the Legislature intended a private cause of action to obtain attorney fees for an unpaid wages suit but no private cause of action to bring the suit itself.")

[3] Supra, n.2 The Court also notes that the plain language of the statute supports the existence of a private right of action. The statute identifies categories of individuals—not officials—as those who may "have cause to bring suit for wages earned." N.R.S. 608.140 (identifying mechanics, artisans, miners, laborers, servants, and employees as "hav[ing] cause to bring suit for wages earned and due"). Moreover, the provision within the statute for the payment of "attorney fee[s]" further supports an implied private right of action. There would be no need for such allowance within the language of the statute if a private right of action were not implied.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss is granted in part and denied in part, as follows:

- Count 1 (Disability Discrimination) is dismissed.
- Count 2 (Race, Color, Religion, and National Origin Discrimination) is dismissed only with respect to the claim for hostile work environment discrimination on the basis of religion, and may proceed in all other respects.
- Count 5 (Retaliation) is dismissed to the extent it asserts a claim under Title VII, but may proceed under the FMLA.
- Count 6 (Breach of the Implied Covenant of Good Faith and Fair Dealing) is dismissed only with respect to the potential for tort liability.
- Count 8 (FLSA Overtime) is dismissed with leave to amend.
- Counts 8 through 13 (Violations of the Nevada Labor Statutes) are dismissed with leave to amend.
- All the Individual Defendants except for Kristen Beck and Michael Marrs are dismissed from the case without prejudice.
- All other claims may proceed.

To the extent this written ruling is inconsistent with any oral rulings or pronouncement from the Court, this written order controls.

DATED October 5, 2016:

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**